UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

CERTAIN UNDERWRITERS AT LLOYD'S,
LONDON SUBSCRIBING TO POLICY
NUMBER PGIARK03959,

                        Plaintiffs,                   Case No.: 1:16:cv-05005-DLC

     - against -

NEW DOMINION, LLC,

                        Defendant.

-----------------------------------------------------------------------X

### DEFENDANT NEW DOMINION, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS OR STAY THE COMPLAINT FOR DECLARATORY RELIEF OR, IN THE ALTERNATIVE, MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

BAUM GLASS & JAYNE PLLC
Andrew C. Jayne, *pro hac vice admission pending*
ajayne@bgj-law.com
Emily C. Krukowski, *pro hac vice admission pending*
ekrukowski@bgj-law.com
401 S. Boston Avenue, Suite 2300
Tulsa, Oklahoma 74103
Tel: (918) 938-7944
Fax: (918) 938-7966

SPEARS & IMES LLP
David Spears
dspears@spearsimes.com
Reed M. Keefe
rkeefe@spearsimes.com
51 Madison Avenue, 25th floor
New York, New York 10010
Tel: (212) 213-6996
Fax: (212) 213-0849

*Attorneys for Defendant*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................iv-v

INTRODUCTION ...............................................................................................1-3

SUMMARY OF CASE .........................................................................................3-6

ARGUMENTS AND AUTHORITIES .....................................................................6-25

   I. THE COURT SHOULD DISMISS OR STAY THE SDNY ACTION UNDER THE WILTON/BRILLHART
      DOCTRINE OF ABSTENTION.........................................................................6-20

       *A. Applicable Legal Standard*.........................................................6-8

       *B. The Wilton/Brillhart Factors Support Abstention in this Case* .......................8-20

           1. The Oklahoma and SDNY Action are Parallel in Scope to One Another
             ....................................................................................8-9

           2. The Claims of All Parties in Interest Can Satisfactorily be Adjudicated in
             the Oklahoma Action ......................................................9-11

           3. The Necessary Parties Have Been Joined in the Oklahoma Action .
             ....................................................................................11-12

           4. Lloyd's is Amenable to Process in the Oklahoma Action...............12-13

           5. Abstention by this Court Avoids Duplicative Litigation.................14

           6. Abstention by this Court Prevents Lloyd's from Forum Shopping..15-16

           7. Oklahoma is a More Convenient Forum .........................................16-17

           8. The Oklahoma Action is Progressing Ahead of the SDNY Action..17-18

           9. The Claims and Issues to be Resolved Involve State Substantive Law
             ....................................................................................18-19

       *C. Based on the Factors, the Court Should Abstain and Dismiss or Stay the SDNY
          Action* ................................................................................19-20

   II. THIS COURT SHOULD DECLINE TO DECIDE ANY ISSUES REGARDING THE VALIDITY AND
      ENFORCEABILITY OF THE CHOICE OF LAW AND FORUM CLAUSE.......................20-24

    A. *A Decision on the Validity and Enforceability of the Choice of Law and Forum Clause asks the Court to Participate in a "Race to Res Judicata"* ...............20-23

    B. *Any Decisions on the Validity and Enforceability of the Choice of Law and Forum Clause Should be Reserved to the Oklahoma Courts, as They Have Materially Greater Interests in Deciding the Issues Between Lloyd's and New Dominion* ...................................................................................................................23-24

III. IN THE ALTERNATIVE, THIS COURT LACKS PERSONAL JURISDICTION OVER NEW DOMINION ...........................................................................................................................24-25

CONCLUSION..................................................................................................................25

# TABLE OF AUTHORITIES

## Cases

*ACE Am. Ins. Co. v. GrafTech Int'l Ltd.*, No. 12-cv-6355 (RA), 2014 U.S. Dist. LEXIS 86682 (S.D.N.Y. June 24, 2014).................................................................................................19

*Am. Motorists Ins. Co. v. Glidden Co.*, 129 F. Supp. 2d 640 (S.D.N.Y. 2001).................11

*Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942) ...............................................................7

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)......................................................24

*Capital Bank & Trust Co. v. Associated Int'l Ins. Co.*, 576 F. Supp. 1522 (M.D. Ca. 1984) ....................................................................................................................................13

*DiBella v. Hopkins*, 187 F. Supp. 2d 192 (2d Cir. 1999)...................................................24 .

*Dunkin' Donuts Franchised Rests. LLC v. Rijay, Inc.*, No. ECF Case 06 Civ. 8237 (WCC), 2007 U.S. Dist. LEXIS 36614 (S.D.N.Y. May 16, 2007) .......................................................15

*Dunne v. Doyle*, No. 3:13-cv-01075 (VLB), 2014 U.S. Dist. LEXIS 102391 (D. Conn. July 28, 2014) ...............................................................................................................................15

*Dow Jones v. Harrods Ltd.*, 346 F.3d 357 (2d Cir. 2003) .................................................20

*Employers Ins. of Wausau v. El Paso Tenn. Pipeline Co.*, No. 98 Civ. 4612 (JSR), 1998 U.S. Dist. LEXIS 18069 (S.D.N.Y. Nov. 12, 1998) .................................................................11

*Hartford Accident & Indem. Co. v. Hop-On Int'l Corp.*, 568 F. Supp. 1569 (S.D.N.Y. 1983) .......................................................................................................................... 17-18

*Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408 (1984)...............................24

*Int'l Shoe Co. v. Wash.*, 326 U.S. 310 (1945)............................................................. 24-25

*Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236 (2d Cir. 1999) ...........................................24

*Lexington Ins. Co. v. Unionamerica Ins. Co.*, No. 85 Civ. 9181 (MJL), 1987 U.S. Dist. LEXIS 4358 (S.D.N.Y. May 26, 1987)...................................................................................13

*Milliken v. Meyer*, 311 U.S. 456 (1940) ..................................................................... 24-25

*Mitsui Sumitomo Ins. United States, Inc. v. Gibson Guitar Corp.*, No. 11 Civ. 295 (LLS), 2011 U.S. Dist. LEXIS 101260 (S.D.N.Y. Sept. 8, 2011)......................................... 9, 16-17, 19

*Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17 (2d Cir. 1997)......................................8, 9

*Nat'l Union Fire Ins. Co. v. Turbi de Angustia*, No. 05 CIV. 2068 (DLC), 2005 U.S. Dist. LEXIS 18141 (S.D.N.Y. Aug. 24, 2005) ............................................................... 7, 20-23

*Nat'l Union Fire Ins. Co. of Pittsburg v. Warrantech Corp.*, No. 00 Civ. 5007, 2001 U.S. Dist. Lexis 1900 (S.D.N.Y. Feb. 26, 2001) ...................................................................9

*Prudential Ins. Co. of Am. v. Doe*, 140 F.3d 785 (8th Cir. 1997).....................................15

*Reliance Ins. Co. v. Multi-Financial Sec. Corp.*, No. 94 Civ. 6971 (SS), 1996 U.S. Dist. LEXIS 1503 (S.D.N.Y. Feb. 8, 1996) ...............................................................................17

*TIG Ins. Co. Fairchild Corp.*, No. 07 Civ. 8250 (JGK), 2008 U.S. Dist. LEXIS 41452 (S.D.N.Y. May 23, 2008) ............................................................................... 6, 7-8

*Travelers Indem. Co. v. Phillips Elecs. N. Am. Corp.*, No. 02 Civ. 9800 (WHP), 2004 U.S. Dist. LEXIS 1298 (S.D.N.Y. Feb. 3, 2004)...............................................7, 9, 18, 19

*Ulico Cas. Co. v. Cox Mech. Contracting, Inc.*, No. 04 Civ. 6185, 2007 U.S. Dist. LEXIS 57915 (S.D.N.Y. Aug. 2, 2007) ...............................................................................14

*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) ......................................................... 6-7

*Winterthur Int'l Am. Ins. Co. v. Pepsico, Inc.*, No. 01 Civ. 9132 (WK), 2002 U.S. Dist. LEXIS 8511 (S.D.N.Y. May 8, 2002)...............................................................................11, 19

## Statutes

Okla. Stat. tit. 36, § 621 ...............................................................................................13

28 U.S.C. § 2201(a) .......................................................................................................6

28 U.S.C. § 2283...........................................................................................................22

## Other

Federal Rule of Civil Procedure 12(b)(2) .........................................................................24

Defendant New Dominion, LLC ("New Dominion") respectfully submits this Memorandum of Law in support of its Motion to Dismiss or Stay the Plaintiffs Certain Underwriters at Lloyd's, London Subscribing to Policy Number PGIARK03959 ("Lloyd's") Complaint for Declaratory Relief pursuant to the *Wilton/Brillhart* doctrine of abstention. Alternatively, New Dominion asserts that this Court lacks personal jurisdiction over it, and requests that this action be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2).  In support of its Motion, New Dominion shows the Court as follows:

## INTRODUCTION

Between January 11, 2016 and February 18, 2016, New Dominion, along with several other oil and gas companies located in Oklahoma, were sued in five (5) separate lawsuits in various Oklahoma courts.  Each of these lawsuits allege that New Dominion's and these other oil and gas companies' disposal or injection of waste water—a pollutant—back into the ground, caused or contributed to cause earthquakes in Oklahoma.  This issue has been a highly debated topic within Oklahoma given the rise of earthquakes within the state in recent years.

Following commencement of the five (5) lawsuits, New Dominion timely provided Lloyd's notice of the lawsuits, and made claims for defense and indemnification.   Lloyd's provided New Dominion with pollution coverage through the policies of insurance at issue in this matter.  New Dominion had procured this pollution coverage from Lloyd's to protect itself from the various risks associated with pollution, which includes protection regarding the disposal of waste water.  After being provided notice of the five (5) lawsuits, on or about May 4, 2016, Lloyd's sent correspondences to New Dominion, informing it that it had concluded that no coverage existed under the pollution policies.

1

Under Oklahoma law, Lloyd's denial was a breach of the contract of insurance and a breach of the duty of good faith and fair dealing. As such, New Dominion promptly filed suit against Lloyd's in state court in Oklahoma on or about June 16, 2016. On that same day, as a matter of professional courtesy, counsel for New Dominion provided counsel for Lloyd's a copy of the Petition for the Oklahoma state court action and inquired whether he would accept service on behalf of Lloyd's. After being advised by counsel for Lloyd's that he was not authorized to accept service, New Dominion timely served Lloyd's with the Oklahoma state court action through the Insurance Commissioner of the State of Oklahoma on June 27, 2016. On July 6, 2016, New Dominion also provided a copy of the Petition and Summons to the New York address listed in a service of suit clause in the policies of insurance, which gave Lloyd's further notice of the Oklahoma lawsuit.

Rather than pursue its coverage claims with the state court in Oklahoma, Lloyd's filed this present action for declaratory relief on June 27, 2016. This was eleven (11) days after New Dominion filed its action against Lloyd's and provided Lloyd's with notice of the action. It is clear that by filing this declaratory judgment action, Lloyd's has decided to engage in procedural gamesmanship, which federal courts warn against. In order to prevent this very scenario from proceeding, federal courts have developed the *Wilton/Brillhart* doctrine of abstention, which allows federal courts to abstain from hearing declaratory judgment actions when there is a parallel state court proceeding.[1] As more fully explained below, the facts of this case fall directly within the scope of that doctrine. Accordingly, this Court should decline to hear this

---

[1] On July 22, 2016, only three days before the filing of this motion, Plaintiffs removed the Oklahoma lawsuit to the District Court for the Northern District of Oklahoma. Defendant is confident that the Oklahoma suit will be promptly remanded due to lack of federal jurisdiction and therefore addresses abstention under the *Wilton/Brillhart* doctrine in this Memorandum. To the extent Plaintiffs argue that this Motion should be evaluated under the standard for dismissal in light of another pending federal action, the instant matter should nonetheless be dismissed, and Defendant will address any such arguments as to dismissal of pending federal actions in its reply papers.

case, especially since Oklahoma has greater interests in any decisions regarding the issues between Lloyd's and New Dominion.

Lloyd's may attempt to assert that the case should proceed in federal court, given the choice of law and forum clause that is contained within the policies. However, as also more fully explained below, if this Court were to decide any issues regarding the validity and enforceability of the choice of law and forum clause, it would be promoting a "race to *res judicat*a," a type of procedural gamesmanship which federal courts try to avoid. Furthermore, any substantive decision as to the validity and enforceability of the choice of law and forum clause should be reserved to the courts in Oklahoma, as they have materially greater interests in adjudicating the dispute between Lloyd's and New Dominion.

## SUMMARY OF THE CASE

1.      New Dominion is an Oklahoma limited liability company engaged in the business of oil and gas production within the state of Oklahoma. *See* Compl. ¶ 9, ECF No. 1.

2.      All the oil and gas properties that New Dominion operates that are the subject of this litigation are located within the state of Oklahoma. Compl. ¶¶ 17-18.

3.      On July 1, 2014, Lloyd's began providing New Dominion with pollution insurance coverage under Policy No. PGIARK03959-00.  On July 1, 2015, the policy of pollution insurance was renewed under Policy No. PGIARK03959-01 (hereinafter referred to as the "Policies"). *See* Certain Underwriters at Lloyd's, London, Policy No. PGIARK03959-00, Compl. Ex. 1, ECF No. 1-1; Certain Underwriters at Lloyd's, London, London, Policy No. PGIARK03959-01, Compl. Ex. 2, ECF Nos. 1-2 and 1-3.

4.     Between January 11, 2016 and February 18, 2016, New Dominion, along with several other oil and gas companies, were sued in five (5) separate lawsuits (collectively referred to as the "Earthquake Lawsuits").

5.     The Earthquake Lawsuits generally allege that New Dominion and the other oil and gas companies have caused or contributed to cause earthquakes in Oklahoma as a result of their disposal or injection of waste water back into the ground.   The styles of the Earthquake Lawsuits are as follows:

a.     *Felts v. Devon Energy Production Company, L.P.*, Case No. CJ-2016-137, Oklahoma County, State of Oklahoma (filed January 11, 2016) (the "Felts Lawsuit");

b.     *Griggs v. Chesapeake Operating, LLC, et al.*, Case No. CJ-2016-6, Logan County, State of Oklahoma (filed January 12, 2016) (the "Griggs Lawsuit");

c.     *Lene v. Chesapeake Operating, LLC*, et al., Case No. CJ-2016-27, Logan County, State of Oklahoma (filed February 12, 2016) (the "Lene Lawsuit");

d.     *Sierra Club v. Chesapeake Operating LLC, et al.*, Case No. CIV-16-134, United States District Court of the Western District of Oklahoma (filed February 16, 2016) (the "Sierra Club Lawsuit"); and

e.     *West v. ABC Oil Company, Inc., et al.*, Case No. CJ-16-49, Pottawatomie County, State of Oklahoma (filed February 18, 2016) (the "West Lawsuit").

*See* the Earthquake Lawsuits, Compl. Exs. 3-7, ECF Nos. 1-4, 1-5, 1-6, 1-7, and 1-8.

6.     The Griggs Lawsuit and West Lawsuit are class action lawsuits, while the Felts Lawsuit, Lene Lawsuit, and the Sierra Club Lawsuit are individual actions. *See id.*

7.     Following commencement of the Earthquake Lawsuits, New Dominion timely provided Lloyd's with notice of the lawsuits through their insurance agent and made claims for both defense and indemnity for each of the Earthquake Lawsuits.

8.     On or about May 4, 2016, counsel for Lloyd's located in Oklahoma, sent letters to New Dominion, which stated that Lloyd's had concluded that no coverage existed under the Policies. *See* Correspondences from Robert S. Lafferrandre to Fred Buxton, Dated May, 4, 2016, Compl. Ex. 8, ECF No. 1-9.

9.     On June 16, 2016, in order to preserve its claims against Lloyd's, New Dominion promptly filed an action in the district court, in Tulsa County, State of Oklahoma (the "Oklahoma Action"). *See* Pet., *New Dominion, LLC v. Certain Underwriters at Lloyd's, London Subscribing to Policy Nos. PGIARK03959-00 and PGIARK03959-01, et. al*, Decl. of Andrew C. Jayne, dated July 26, 2016 ("Jayne Decl.") Ex. 1.

11.     The Petition in the Oklahoma Action alleges that Lloyd's denial of coverage is contrary to Oklahoma law and is contrary to the language of the policy.   The Petition asserts causes of action for breach of contract and breach of the duty of good faith and fair dealing. *See* Jayne Decl. Ex. 1 ¶¶ 11-15.

12.     On June 16, 2016, counsel for New Dominion sent counsel for Lloyd's a copy of the Petition and Summons and inquired as to whether he would accept service on behalf of Lloyd's. *See* Email from Andrew C. Jayne to Robert Lafferrandre, dated June 16, 2016, Jayne Decl. Ex. 2.

13.     Counsel for Lloyd's declined, so, on June 27, 2016, Lloyd's was served with process in the Oklahoma Action through the Oklahoma Insurance Commissioner. *See* Summons, *New Dominion, LLC. v. Certain Underwriters at Lloyd's, London Subscribing to Policy Nos.*

*PGIARK03959-00 and PGIARK03959-01, et. al*, Jayne Decl. Ex. 3.  This was the appropriate means to serve Lloyd's, as set forth in the service of suit clause in the Policies (the "Service of Suit Clause").  *See* Compl. Exs. 1-2.

14.      In addition, New Dominion provided Lloyd's a copy of the Petition and Summons through the New York address listed in the Service of Suit Clause on July 6, 2016.  *See* Correspondence from Andrew C. Jayne to Certain Underwriter's at Lloyd's, London c/o Mendes and Mount, dated July 6, 2016, Jayne Decl. Ex. 4.

15.      On June 27, 2016, Lloyd's filed this declaratory relief action in the Southern District of New York (the "SDNY Action").  *See* Compl.

## ARGUMENT AND AUTHORITIES

### I.      THE COURT SHOULD DISMISS OR STAY THE SDNY ACTION UNDER THE *WILTON/BRILLHART* DOCTRINE OF ABSTENTION

#### A.      *Applicable Legal Standard*

Lloyd's has brought this action for declaratory relief pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201-02.  28 U.S.C. §§ 2201-02 refers to sections in the Declaratory Judgment Act (the "Act").  The Act "permits, rather than mandates, district courts to grant declaratory relief." *TIG Ins. Co. v. Fairchild Corp.*, No. 07 Civ. 8250 (JGK), 2008 U.S. Dist. LEXIS 41452, at *4 (S.D.N.Y. May 23, 2008) (citing 28 U.S.C. § 2201(a)).  The permissive nature of the Act has been discussed by the Supreme Court who has noted that the purpose of the Act is to "place a remedial arrow in the district court's quiver" and "create[] an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995).  Accordingly, to be consistent with the "nonobligatory nature of the remedy," federal district courts are "authorized, in the sound exercise of [their] discretion, to stay or to dismiss an action seeking a declaratory judgment." *Id.*

As the Supreme Court has stated, within the declaratory judgment context, the "normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Id.*

This permissive nature of the Act as discussed by the Supreme Court has given rise to a doctrine in which federal courts abstain from hearing declaratory judgment actions when there is a parallel state court action. *See Nat'l Union Fire Ins. Co. v. Turbi de Angustia*, No. 05 CIV. 2068 (DLC), 2005 U.S. Dist. LEXIS 18141, at *6-7 (S.D.N.Y. Aug. 24, 2005) (citations omitted). Ultimately, federal courts may decline to hear a case to avoid the "'vexatious' waste of judicial resources and 'gratuitous interference'" with any parallel state court proceedings. *Travelers Indem. Co. v. Phillips Elecs. N. Am. Corp.*, No. 02 Civ. 9800 (WHP), 2004 U.S. Dist. LEXIS 1298, at *11 (S.D.N.Y. Feb. 3, 2004). Although the Supreme Court in *Wilton* did not set forth a definitive test for federal courts to consider when deciding whether or not to abstain, the Supreme Court did endorse factors previously set forth by the Supreme Court in an earlier case, *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942), as being a non-exclusive guide, with the possibility that other factors may be used in the analysis. *TIG Ins. Co.*, 2008 U.S. Dist. LEXIS 41452, at *5 (citing *Wilton*, 515 U.S. at 282-83). This doctrine and corresponding test came to be referred to as the *Wilton/Brillhart* doctrine of abstention. Courts sitting within the Southern District of New York have widely adhered to this doctrine.

Courts within the Southern District of New York have considered the following factors under the *Wilton/Brillhart* doctrine: (1) the scope of the pending state proceeding and the nature of the defenses available there; (2) whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding; (3) whether the necessary parties have been joined; (4) whether such parties are amenable to process in the state proceeding; (5) avoiding duplicative

proceedings; (6) avoiding forum shopping; (7) the relative convenience of the fora; (8) the order of the filing; and (9) choice of law. *TIG Ins. Co.*, 2008 U.S. Dist. LEXIS 41452, at *6 (citation omitted).

In considering the application of the factors to this case, it is clear that this Court should abstain from deciding any issues in the SDNY Action pending the parallel Oklahoma Action.

### B.      The Wilton/Brillhart Factors Support Abstention in this Case

#### 1.      The Oklahoma Action and SDNY Action are Parallel in Scope to One Another

In this first factor, federal courts look to whether or not the state and federal actions are parallel in scope.  When considering this factor, federal courts have stated that federal and state actions are parallel when the "two proceedings are essentially the same," or when "there is an identity of parties, and the issues and relief sought are the same." *Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 21 (2d Cir. 1997) (citations omitted).  In considering the SDNY Action and the Oklahoma Action, it is clear that both are parallel in scope to one another.

To begin, there is an identity of the parties, as Lloyd's and New Dominion are parties to both the SDNY Action and to the Oklahoma Action.  In addition, the issues to be adjudicated and relief sought in both the SDNY Action and Oklahoma Action will be the same.  As stated above, in the Oklahoma Action, New Dominion seeks relief for breach of contract and breach of the duty of good faith and fair dealing against Lloyd's for its denial of coverage under the Policies.  Lloyd's will defend this action by asserting that its denial of coverage did not breach the contract and was not a breach of the duty of good faith and fair dealing because there was no coverage under the Policies.  In other words, Lloyd's will have to show that there was no coverage under the Policies in the Oklahoma Action.  This defense in the Oklahoma Action is the very same relief that Lloyd's has requested in the SDNY Action.  As such, both the

Oklahoma state district court and the New York federal court will have to decide whether or not coverage exists under the Policies. *See Karp*, 108 F.3d at 21.

Although the above-described defense has not yet been brought in the Oklahoma Action, that makes no difference. Although there may not be an absolute commonality of claims between state and federal actions as currently constituted, federal courts have determined abstention is still appropriate when the absent claims or defenses are "readily ascertainable" as claims or defenses in the state court or federal court actions. *See Nat'l Union Fire Ins. Co. of Pittsburg v. Warrantech Corp.*, No. 00 Civ. 5007 (NRB), 2001 U.S. Dist. LEXIS 1900, at *9 (S.D.N.Y. Feb. 26, 2001) (citations omitted). Thus, even though the above-described defense is not yet present in the Oklahoma Action, it is clear that this is readily ascertainable given the commonality of the claims that already exist in these actions. As such, the SDNY Action and Oklahoma Action are clearly parallel to one another.

### 2.     The Claims of All Parties in Interest Can be Satisfactorily Adjudicated in the Oklahoma Action

The second factor federal courts consider is whether or not the claims of all the parties in interest can be satisfactorily adjudicated in the state court proceeding. When examining this factor, federal courts have indicated that state courts are in a much better position to decide issues regarding state law. *See Mitsui Sumitomo Ins. United States, Inc. v. Gibson Guitar Corp.*, No. 11 Civ. 295 (LLS), 2011 U.S. Dist. LEXIS 101260, at *7-8 (S.D.N.Y. Sept. 8, 2011); *see also Travelers Indem. Co.*, 2004 U.S. Dist. LEXIS 1298, at *10. This is the case, even if the parties ultimately disagree as to what law applies in interpretation of the insurance policy; federal courts generally reserve claims regarding the interpretation of policies of insurance to state courts, as those claims and associated issues are solely matters of state law. *Travelers Indem. Co.*, 2004 U.S. Dist. LEXIS 1298, at *10. Here, all claims between New Dominion and

9

Lloyd's involve state law issues and, as such, can be satisfactorily adjudicated in the Oklahoma Action.

As stated above, Lloyd's seeks a determination in the SDNY Action as to whether coverage exists under the Policies and will assuredly assert that as a defense in the Oklahoma Action. Accordingly, the issues Lloyd's will seek to resolve in both the SDNY Action and Oklahoma Action involve matters of state law, as the interpretation of insurance policies is simply a matter of the interpretation of a contract. Similarly, New Dominion also seeks to adjudicate only matters involving state law. New Dominion seeks relief for breach of contract and the duty of good faith and fair dealing in the Oklahoma Action. Matters involving breach of contract and the duty of good faith and fair dealing are also matters that involve state substantive law. As such, the district court in Oklahoma is in a much better position to adjudicate and decide issues of state law, even if the parties ultimately disagree as to what law applies to the interpretation of the Policies.[2]

In addition to involving solely matters of state substantive law, these claims can also be satisfactorily adjudicated in Oklahoma, because the state court in Oklahoma is in a much better position to decide the issues between New Dominion and Lloyd's. As the Complaint and attached Exhibits indicate, New Dominion and Lloyd's are seeking to resolve issues regarding coverage under the Policies for the Earthquake Lawsuits that have been filed in courts in Oklahoma. The issues raised in the Earthquake Lawsuits regarding fracking, waste water injection, and earthquakes are a topic of public concern within the State of Oklahoma. Local state government agencies, legislators, and government officials are currently discussing these

---

[2] The Policies contain a Choice of Law and Forum Clause, which designates that the interpretation of the Policies shall be governed under the laws of the state of New York. Although beyond the scope of this Motion, New Dominion takes the position that New York law should not govern the interpretation of the Policies. Lloyd's will likely assert that it does, given the fact that its coverage opinions and denials were analyzed under New York law.

10

issues.   It is an issue that is unique to the State of Oklahoma.   As such, courts sitting within Oklahoma have considerable familiarity with both the legal and factual issues raised in the Earthquake Lawsuits and have knowledge of the implications that any decisions related to the Policies would have on these issues. *See Am. Motorists Ins. Co. v. Glidden Co.*, 129 F. Supp. 2d 640, 641 (S.D.N.Y. 2001). Since the ultimate decisions regarding the Policies concern these unique issues, an Oklahoma court is in a much better position to satisfactorily decide them.

### 3.    The Necessary Parties Have Been Joined in the Oklahoma Action

Federal courts next consider whether all the necessary parties have been joined in the state court action.   Courts have indicated that state court actions that contain all pertinent parties are much more comprehensive than a federal court declaratory judgment action alone. *Am. Motorist Ins. Co.*, 129 F. Supp. 2d at 641; *Winterthur Int'l Am. Ins. Co. v. Pepsico, Inc.*, No. 01 Civ. 9132 (WK), 2002 U.S. Dist. LEXIS 8511, at *7 (S.D.N.Y. May 8, 2002).   Courts have further expressed concern for how the joinder of parties may impact certain jurisdictional areas, such as that which is based upon diversity of citizenship. *Winterthur Int'l Am. Ins. Co.*, 2002 U.S. Dist. LEXIS 8511, at *7.   Ultimately, courts have expressed that it is much more efficient to "resolve all [] issues in one case, ending in consistent judgments binding against all." *Employers Ins. of Wausau v. El Paso Tenn. Pipeline Co.*, No. 98 Civ. 4612 (JSR), 1998 U.S. Dist. LEXIS 18069, at *5 (S.D.N.Y. Nov. 12, 1998).   Thus, having all pertinent parties joined in one action, is much more efficient and comprehensive.   In this case, it would be more efficient and comprehensive to adjudicate the issues between Lloyd's and New Dominion in the Oklahoma Action, as it contains all necessary parties.

As previously noted, both Lloyd's and New Dominion are parties to the Oklahoma Action.   In addition, New Dominion's Oklahoma Action also names Mark Tedford and Tedford

11

& Associates, LLC (collectively the "Tedford Parties"), as defendants. The Tedford Parties were responsible for procuring commercial general liability coverage ("CGL") for New Dominion with National American Insurance Company ("NAICO"), which is an Oklahoma insurance company. Like Lloyd's, NAICO has denied the existence of coverage under the policies it has with New Dominion for the claims and damages related to the Earthquake Lawsuits. Although New Dominion is currently in settlement discussions with NAICO, if the settlement discussions fail, New Dominion will have to add NAICO to the Oklahoma Action. It is clear that because both denials of coverage relate to the Earthquake Lawsuits, there will be numerous factual and legal issues as to the interpretation of the policies that will overlap. As such, because New Dominion had claims against both Lloyd's and the Tedford Parties, and also foresaw a likelihood of having to join NAICO, it appropriately filed the one Oklahoma Action.

Further, New Dominion had to bring this action against Lloyd's and the Tedford Parties in an Oklahoma state court because, like New Dominion, the Tedford Parties and NAICO are citizens of Oklahoma for purposes of diversity jurisdiction. If this Court chose not to abstain, and New Dominion sought to join the Tedford Parties and NAICO to the SDNY Action, there would be issues regarding joinder and jurisdiction, which, in turn, could potentially cause different courts to hear overlapping claims. As the federal courts have indicated, this type of piecemeal litigation should be avoided and it is much more efficient to resolve all issues in one case. This type of consistency could be achieved in the Oklahoma Action, where all the parties are joined and all issues between them may be adjudicated.

4.    **Lloyd's is Amenable to Process in the Oklahoma Action**

Under the fourth factor, federal courts examine whether the parties are amenable to process in the state court proceeding.  In this case, it is clear that both Lloyd's and New Dominion are amenable to process in the Oklahoma Action.

New Dominion is obviously amenable to process in the Oklahoma Action, as it voluntarily brought suit there.  Like New Dominion, Lloyd's is also amenable to process in Oklahoma.  New Dominion successfully served Lloyd's through the Oklahoma Insurance Commissioner, a means of service expressly authorized in the Policies.  As the Service of Suit Clause in the Polices states, Lloyd's agrees that, "pursuant to any statute of any state," it designates any "other officer specified" for the purpose of being "served [with] lawful process in any action, suit or proceeding" as "their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of" New Dominion.  *See* Compl. Exs. 1-2.   Service upon Lloyd's through the Oklahoma Insurance Commissioner was proper, as that is the exclusive means by which insurance companies are to be served with process in the State of Oklahoma.  Okla. Stat. tit. 36, § 621.

It is also though this Service of Suit Clause that Lloyd's expressly agrees to submit to the jurisdiction of Oklahoma.  Specifically, under the Service of Suit Clause, Lloyd's, "at the request of the Insured . . . will submit to the jurisdiction of a Court of competent jurisdiction within the United States."  *See* Compl. Exs. 1-2.  The purpose of this type of provision in an insurance policy is to "allow a dissatisfied policyholder to compel the insurer to appear in a forum of the insured's choice."  *Lexington Ins. Co. v. Unionamerica Ins. Co.*, No. 85 Civ. 9181 (MJL), 1987 U.S. Dist. LEXIS 4358, at *6 (S.D.N.Y. May 26, 1987) (citing *Capital Bank & Trust Co. v. Associated Int'l Ins. Co.*, 576 F. Supp. 1522, 1523 (M.D. Ca. 1984)).  Accordingly, Lloyd's has also expressly agreed to the jurisdiction of the Oklahoma state court.

### 5. Abstention by this Court in the SDNY Action Avoids Duplicative Litigation

In this fifth factor, federal courts determine whether abstention will help to avoid duplicative litigation.  Litigation is said to be duplicative when "'two substantially identical lawsuits proceed at the same time.'"  *Ulico Cas. Co. v. Cox Mech. Contracting, Inc.*, No. 04 Civ. 6185, 2007 U.S. Dist. LEXIS 57915, at *22, n.12 (S.D.N.Y. Aug. 2, 2007) (quoting *Dunkin' Donuts Franchised Rests. LLC v. Rijay, Inc.*, No. 06 Civ. 8237 (WCC), 2007 U.S. Dist. LEXIS 36614, at *5, n.17 (S.D.N.Y. May 16, 2007)).  The SDNY Action and the Oklahoma Action are duplicative to one another, and as such, abstaining from hearing the SDNY Action would avoid these duplicative efforts.

Both the SDNY Action and Oklahoma Action will concern claims and defenses that pertain to the existence of coverage under the Policies.  In the SDNY Action, Lloyd's will assert that coverage under the Policies does not exist while New Dominion will assert various claims and defenses arguing that coverage does exist.  The Oklahoma Action will proceed in a similar manner, with New Dominion having to assert that coverage exists under the Policies in its claims for breach of contract and the duty of good faith and fair dealing while Lloyd's will most certainly defend that suit by stating that it is not liable for breach of contract and breach of the duty of good faith and fair dealing because coverage does not exist under the Policies.  The ultimate issue in each action concerns the interpretation of whether or not coverage exists under the Policies.  This overlap will involve the same legal arguments, same evidence, and same witnesses.  As such, "each element of the claims would be explored similarly in state and federal court."  *Ulico Cas. Co.*, 2007 U.S. Dist. LEXIS 57915, at *22, n.12.  To avoid this duplication, this Court should abstain from hearing the SDNY Action.

6.     **Abstention by this Court Prevents Lloyd's from Forum Shopping**

The sixth factor is whether or not the abstention will prevent a party from forum shopping.  Federal courts have noted that there is a strong, established public policy against forum shopping tactics.  *Dunne v. Doyle*, No. 3:13-cv-01075 (VLB), 2014 U.S. Dist. LEXIS 102391, at *40 (D. Conn. July 28, 2014) (dealing with *Colorado River* abstention analysis). Federal courts should not "condone or encourage forum shopping," as it evokes a sense of procedural gamesmanship.  *Id.* at 43.   Courts have also noted that while declaratory judgment actions are often used to determine coverage and "simultaneously avoid[] exposure to substantial bad faith damages," actions for declaratory relief "are not to be used defensively to deny a [] plaintiff's choice of forums."  *Prudential Ins. Co. of Am. v. Doe*, 140 F.3d 785, 790 (8th Cir. 1997) (citations omitted).  Based upon the facts of this case, allowing Lloyd's to proceed with its declaratory judgment action would promote forum shopping.

Despite the Service of Suit Clause, which expressly consents to the jurisdiction of New Dominion's choosing, instead of pursing any coverage analysis in the Oklahoma Action, Lloyd's has pursued this SDNY Action.  By doing this, Lloyd's has attempted to avoid having to litigate issues in Oklahoma, as evidenced by the fact that Lloyd's filed the SDNY Action after the Oklahoma Action was filed.  Lloyd's was properly served with the Oklahoma Action and was put on notice thereof.   By pursing this SDNY Action, Lloyd's completely disregarded the Service of Suit Clause and has indicated that it does not wish to submit to the jurisdiction of Oklahoma.  Any objection to coverage would have been better asserted in the Oklahoma Action. The filing of the SDNY Action is merely an attempt to assert a defense to the Oklahoma Action in a forum that it believes to be more favorable.

15

Although the Policies contain a Choice of Law and Forum Clause,[3] designating New York as the chosen forum, the insertion of the Service of Suit Clause creates an ambiguity in the Policies that makes it uncertain as to where an action regarding the interpretation of the Policies should be pursued.   It opens the possibility that, despite agreeing to consent to jurisdiction in the chosen forum of the insured, Lloyd's then withdraws that consent through its assertions that the forum is proper in New York because of the Choice of Law and Forum Clause.  It is seemingly unfair to allow an insured to choose a forum to only have that chosen forum be disputed by Lloyd's.  In essence, these two clauses within the policy promote forum shopping and create a procedural gamesmanship that federal courts warn against.   To avoid the promotion of procedural gamesmanship, the Court should abstain from hearing the SDNY Action and allow Lloyd's to pursue any actions regarding the interpretation of the Policies in the Oklahoma Action.

### 7.     Oklahoma is a More Convenient Forum

In the seventh factor, federal courts look to the convenience of the fora by considering the facts of each case.   It is clear that Oklahoma is a more convenient forum than New York.

The underlying issues in both the SDNY Action and the Oklahoma Action concern coverage under the Policies for damages that allegedly resulted from the injection of waste water at various oil and gas sites operated by New Dominion.  New Dominion is an Oklahoma limited liability company, having its principal place of business in Oklahoma.  New Dominion's entire business is located within the state of Oklahoma.  All of these oil and gas sites, which are the subject of the Earthquake Lawsuits, are located within the State of Oklahoma.  *Mitsui Sumitomo*

---

[3] New Dominion addresses its arguments regarding the Choice of Law and Forum Clause in Section II of its Arguments and Authorities.   Although New Dominion disputes the validity and enforceability of the clause, at this point in the litigation, as more fully explained below, this Court should not decide any substantive issues regarding its validity and enforceability.

*Ins. United States, Inc.*, 2011 U.S. Dist. LEXIS 101260, at *7.  Furthermore, the majority of the witnesses and individuals having knowledge of the allegations raised in the Earthquake Lawsuits, the SDNY Action, and the Oklahoma Action are located in Oklahoma as are the majority of documents related to New Dominion's actions and conduct as alleged in these actions.  *See Reliance Ins. Co. v. Multi-Fin. Sec. Corp.*, No. 94 Civ. 6971 (SS), 1996 U.S. Dist. LEXIS 1503, at *16-17 (S.D.N.Y. Feb. 8, 1996).

In addition to the above, the majority of items related to the Policies are also located in Oklahoma.  Although Lloyd's is an international insurance business, located primarily in England, with respect to the Policies at issue, Lloyd's established connections in Oklahoma.  The Policies were negotiated and contracted for in Oklahoma.  In negotiating and contracting these Policies, Lloyd's used an agent that was located in Oklahoma.  These Policies were specifically authored to cover the oil and gas sites located in Oklahoma.  Lloyd's even employed an Oklahoma law firm to evaluate coverage under the Policies for the claims that arose out of the Earthquake Lawsuits.

As this shows, there are virtually no connections to New York.  The only connection appears to be the Choice of Law and Forum Selection Clause along with the address listed in the Service of Suit Clause.  *See* Compl. Exs. 1-2.  These minor connections are not enough to remove Oklahoma from being the more convenient forum.

### 8.   The Oklahoma Action is Progressing Ahead of the SDNY Action

Under the eighth factor, a federal court will consider the order of the filing of the state and federal court actions.  When looking at this factor, courts caution that they are not considering this in terms of a "'race to the courthouse'" because "'declaratory judgment is not a prize to the winner of a race to the courthouse.'" *Hartford Accident & Indem. Co. v. Hop-On*

17

*Int'l Corp.*, 568 F. Supp. 1569, 1573 (S.D.N.Y. 1983) (citations omitted).  If it was considered a "race to the courthouse," courts would be "sanctioning procedural gamesmanship" by the party who filed first.  *Id.*  Courts instead consider this factor in terms of how the actions are proceeding, as in whether one is advancing ahead of the other.  *Travelers Indem. Co.*, 2004 U.S. Dist. LEXIS 1298, at *10.  The Oklahoma Action is progressing ahead of the SDNY Action.

The SDNY Action has just begun to proceed, as Lloyd's has filed its Complaint and New Dominion has filed this present Motion.  In contrast, the Oklahoma Action, filed a week prior to the SDNY Action, is already proceeding ahead of the SDNY Action.  Counsel for the Tedford Parties entered their appearance in the Oklahoma Action.  Lloyd's has removed the Oklahoma Action to federal court in the Northern District of Oklahoma, alleging that the Tedford Parties have been fraudulently joined.  Further, Lloyd's has asked the Northern District of Oklahoma to transfer the Oklahoma Action to this Court, and has filed an Answer to New Dominion's Petition in the Northern District of Oklahoma.  Despite this, New Dominion will seek to have the action remanded because the claims against the Tedford Parties have not been fraudulently joined, and it is quite possible NAICO, another Oklahoma entity, will have to be added to the suit.  Although the effect of the removal will stay the Oklahoma Action, the parties will be litigating these removal issues, which directly impact the Oklahoma Action.  Further, New Dominion is confident that this matter will be successfully remanded to state court and all such matters regarding the forum can be decided in the Oklahoma Action.

9.    **The Claims and Issues to be Resolved Involve Matters of State Substantive Law**

The final factor considers what law applies to the resolution of issues.  As previously noted, the Policies contain a Choice of Law and Forum Clause, designating that the law of the State of New York shall apply.  At this point in the litigation, as more fully explained below, this

Court should not render any decisions as to the validity and enforceability of the Choice of Law and Forum Clause. However, regardless of what law applies, as previously stated, the issues to be resolved between New Dominion and Lloyd's involve state substantive law, which are better reserved to state courts. *Travelers Indem. Co.*, 2004 U.S. Dist. LEXIS 1298, at *10.

### C.      Based on the Factors, the Court Should Abstain and Dismiss or Stay the SDNY Action

As the application of the factors indicates, this Court should abstain from hearing any issues in the SDNY Action. After deciding to abstain, this Court must then decide if it should abstain and dismiss the action, or stay the federal action. In deciding whether to dismiss the action, federal courts have noted that when there is "no useful purpose" that "would be served by retaining jurisdiction, by staying, rather than dismissing," the federal court should abstain and dismiss the action. *Mitsui Sumitomo Ins. United States, Inc.*, 2011 U.S. Dist. LEXIS 101260, at *8. If, however, the actions are in "predominantly the same posture," and one is no further along than the other, courts "see no harm to the parties in staying [] [the] action." *Winterthur Int'l Am. Ins. Co.*, 2002 U.S. Dist. LEXIS 8511, at *8. Courts will stay rather than dismiss to "'preserve any of the [] claims that might not be resolved by the pending state court proceeding.'" *ACE Am. Ins. Co. v. GrafTech Int'l Ltd.*, No. 12-cv-6355 (RA), 2014 U.S. Dist. LEXIS 86682, at *25 (S.D.N.Y. June 24, 2014) (citations omitted).

In this case, all the issues to be resolved between Lloyd's and New Dominion are better left to the state court in Oklahoma. The Oklahoma Action will involve the same issues, is a more comprehensive litigation, is a more convenient forum, contains all the necessary parties, and has a significant interest in the outcome of the issues raised, given the nature of this unique issue to the State of Oklahoma. As such, this Court should abstain and dismiss, as there is no useful purpose for retaining this action. However, should this Court think that it is necessary to

preserve certain issues, especially given the pending issues that are now present in the Northern District of Oklahoma, this Court should abstain and stay this action.

## II.    THIS COURT SHOULD DECLINE TO DECIDE ANY ISSUES REGARDING THE VALIDITY AND ENFORCEABILITY OF THE CHOICE OF LAW AND FORUM CLAUSE

As previously noted, the Policies contain a Choice of Law and Forum Clause.  This clause states the following:

> [i]n the event that the Insured and the Company dispute the validity of formation of this policy or the meaning, interpretation or operation of any term, condition, definition or provision of this policy resulting in litigation, arbitration or any other form of dispute resolution, the Insured and the Company agree that the laws of the State of New York shall apply and that all litigation, arbitration or other form of dispute resolution shall take place in the State of New York.

*See* Compl. Ex 1 at 37; Compl. Ex. 2 at 38.

Lloyd's has alleged that venue is proper in this Court because of this clause.  As such, Lloyd's may assert in opposition to this Motion, that this Court should not abstain because Lloyd's and New Dominion have expressly agreed that jurisdiction lies in the courts of New York, and, therefore, the Oklahoma Action will ultimately be transferred to a court in New York.  However, as more fully explained below, this Court should not yet decide any issues regarding this clause.

### A.    *A Decision on the Validity and Enforceability of the Choice of Law and Forum Clause asks the Court to Participate in a "Race to Res Judicata."*

If this Court were to decide on the validity and enforceability of the Choice of Law and Forum Clause, this Court would be participating in a "'race to res judicata for adjudication of those claims,'" a practice that should be avoided.  *Nat'l Union Fire Ins. Co.*, 2005 U.S. Dist. LEXIS 18141, at *10 (citing *Dow Jones v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003)).

In *National Union Fire Insurance Co.*, the Southern District of New York had to determine whether to decide certain issues regarding the validity and enforcement of a forum selection and choice of law clause.  *Id.* at *14.  After Rugen Dario Angustia ("Angustia") was

kidnapped by a terrorist organization and never heard from again while working in Venezuela, Angustia's relatives sued Angustia's employer, Hanover Compression Co. ("Hanover"), in Texas state court. *Id.* at *1-3. Angustia's relatives later amended the Texas action, to include National Union Fire Insurance Co. of Pittsburg, PA ("National Union"), who provided insurance coverage to Hanover for the alleged actions that Angustia was a victim of. *Id.* at *2-3. The policy also contained a choice of law and forum selection clause. *Id.* at *2-3. National Union moved to dismiss or stay the claims against it in the Texas action on the ground that the forum selection clause mandated that the claims against National Union be adjudicated in New York. *Id.* National Union had also filed an action against the Angustia Relatives in federal court for declaratory judgment under the policy. *Nat'l Union Fire Ins. Co.*, 2005 U.S. Dist. LEXIS 18141, at *4-5. The Angustia Relatives filed a motion to dismiss this federal action, arguing, among other things, that the forum selection clause did not apply and that the court should decline to hear the case under the *Wilton/Brillhart* doctrine of abstention. *Id.* at *5.

The court declined to decide any issues regarding the forum selection and choice of law clause. *Id.* at *14. In so deciding, the court stated that because this was a motion already pending before the Texas state court, it would be "unnecessarily duplicative for this court to participate in such a race to *res judicata.*" *Id.* at *10-11. As the court reasoned, if the Texas court decided on this issue prior to the federal court's decision, the "Texas judgment would stand, according to the principles of *res judicata.*" *Nat'l Union Fire Ins. Co.*, 2005 U.S. Dist. LEXIS 18141, at *10. Under federal law when there is a final judgment, courts would look to the state's rules on *res judicata* to determine the preclusive effect. *Id.* at *10-11. Here, if the Texas court decided first, any issues raised in federal court regarding the enforceability and

validity of the forum selection clause "would almost certainly be dismissed on the basis of *res judicata*." *Id.* at 11.

The court also discussed how it lacked any power to put a stop to the claims against National Union in the Texas action before any judgment was reached on the merits because the Anti-Injunction Act forbids federal courts from granting injunctions to stay state court proceedings "'except as expressly authorized by Act of Congress, or where necessary to aid of its jurisdiction, or to protect or effectuate its judgments.'" *Id.* at *11 (quoting 28 U.S.C. § 2283). Under this third exception, the one relevant to the case at hand, could be used to "protect the *res judicata* effect of [] [federal court] judgments," but cannot be used to "prevent simultaneous state court litigation before *res judicata* or collateral estoppel attaches to the judgment of the federal court." *Id.* at *11-12.  At this point in the litigation, there was nothing that would arise to a valid, final judgment on the merits to qualify this preclusion in federal court.  *Nat'l Union Fire Ins. Co.*, 2005 U.S. Dist. LEXIS 18141, at *12-13.

The only pending motion related to the Oklahoma Action is a Motion to Dismiss or Transfer in the Northern District of Oklahoma, referred to above.  As previously stated, New Dominion will file a motion to remand and is confident the case will be remanded back to state court.  Upon remand, the issues regarding the Choice of Law and Forum Clause will certainly be raised in the state court action in Oklahoma.  If, however, the case is not remanded, the Northern District of Oklahoma is also positioned to resolve the issues regarding the Choice of Law and Forum Clause.  As this reveals, it is clear that the issues regarding the Choice of Law and Forum Clause will first be raised in either the Oklahoma Action, or the federal action in Oklahoma.  If this Court decided at this time to participate in a decision regarding the validity and

22

enforceability of the Choice of Law and Forum Clause, it would be, as the court in *Nat'l Union Fire Ins. Co.* states, participating in a "race to *res judicata*" on that issue.

**B.  Any Decisions on the Validity and Enforceability of the Choice of Law and Forum Clause Should be Reserved to the Oklahoma Courts, as They Have Materially Greater Interests in Deciding the Issues Between Lloyd's and New Dominion**

The Court should also decline to render any decisions on the validity and enforceability of the Choice of Law and Forum Clause.  Instead, any decisions on this should be reserved to the Oklahoma courts, as Oklahoma is a jurisdiction with materially greater interests in deciding the issues between Lloyd's and New Dominion.

Without setting forth all applicable rules as to the validity and enforceability of forum selection clauses, it is clear that this is an issue that is different amongst federal and state courts, and is even different amongst federal courts.  As such, the Northern District of Oklahoma, Southern District of New York, and Oklahoma district court would likely be using different tests for determination of this issue.  Under principles of *res judicata*, the court that first decided this issue would be binding on both the other state and federal courts.  This decision should ultimately be left to a court sitting in Oklahoma, as they are the better courts to adjudicate the validity and enforceability of the Choice of Law and Forum Clause.

As previously noted, the issues between New Dominion and Lloyd's concern items that involve residents, property, and businesses that are located in Oklahoma.  The underlying issues in this litigation regarding the earthquakes and waste water injection are so unique to Oklahoma, that the Southern District of New York should not make any substantive decision that would impact the actions in Oklahoma and the underlying Earthquake Lawsuits.  Any decision about coverage under the Policies and the interpretation of the Policies regarding waste water injection will have a direct impact on the State of Oklahoma.  A federal district court in New York has no

23

reason to decide issues that will not have any impact on the state in which it sits.  As such, any decisions regarding the enforceability and validity of the Choice of Law and Forum Clause should be reserved for the Oklahoma courts.

## III.   IN THE ALTERNATIVE, THIS COURT LACKS PERSONAL JURISDICTION OVER NEW DOMINION

In the alternative, if this Court should decide not to abstain under the *Wilton/Brillhart* doctrine of abstention, this Court should dismiss this case for lack of personal jurisdiction over New Dominion pursuant to Federal Rule of Civil Procedure 12(b)(2).

On a motion to dismiss for lack of personal jurisdiction, the "'plaintiff bears the burden of showing that the court has jurisdiction over the defendant.'"  *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 240 (2d Cir. 1999) (citations omitted).  During the initial pleading stages, "a plaintiff is required only to make a prima facie showing of jurisdiction."  *DiBella v. Hopkins*, 187 F. Supp. 2d 192, 198 (S.D.N.Y. 2002) (citing Fed. R. Civ. P. 12(b)(2)).  However,  to exercise personal jurisdiction over a non-resident defendant, the plaintiff's prima facie showing must meet a two-part analysis.  *Kernan*, 175 F.3d at 240.

A court first determines if jurisdiction exists under the law of the forum state and then determines whether the exercise of jurisdiction under that particular state law satisfies the requirements of federal due process.  *Id.*  (citations omitted).  Federal due process requires that non-residents have certain purposeful, minimum contacts with the forum state, which can give rise to either general or specific jurisdiction over a non-resident defendant.  *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 nn.8-9 (1984).  The contacts giving rise to general jurisdiction must be "substantial and systematic" and cannot be "'random,' 'fortuitous,' or 'attenuated.'"  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citations omitted).  Once such minimum contacts are established, due process also requires that maintenance of the

24

suit not offend "'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 456, 463 (1940)).

As the attached declaration of Fred Buxton, Vice-Present and General Counsel for New Dominion, indicates, New Dominion has no contacts with the State of New York so as to give rise to jurisdiction under the laws of the State of New York, nor does New Dominion have sufficient contacts to satisfy federal due process. *See* Decl. of Fred Buxton, dated July 25, 2016, ECF No. 16. New Dominion simply has no contacts with the State of New York. Further, the Choice of Law and Forum Clause is not dispositive on the issue of personal jurisdiction because this involves an insurance contract, which is a contract of adhesion. Insurance contracts should not be utilized to force an insured to litigate in a state in which it has no minimum contacts whatsoever.

## CONCLUSION

For the above reasons, Defendant New Dominions, LLC respectfully requests this Honorable Court grant its Motion to abstain and dismiss or stay from hearing this action, or, in the alternative, dismiss for lack of personal jurisdiction.

Dated: Tulsa, Oklahoma
July 26, 2016

BAUM GLASS & JAYNE PLLC
By: _____
Andrew C. Jayne, *pro hac vice admission*
    *pending*
ajayne@bgj-law.com
Emily C. Krukowski, *pro hac vice*
    *admission pending*
ekrukowski@bgj-law.com
401 S. Boston Avenue, Suite 2300
Tulsa, Oklahoma 74103
Tel: 918-938-7944
Fax: 918-938-7966
*Attorneys for Defendant*

SPEARS & IMES LLP
David Spears
dspears@spearsimes.com
Reed M. Keefe
rkeefe@spearsimes.com
51 Madison Avenue, 25th floor
New York, New York 10010
Tel: (212) 213-6996
Fax: (212) 213-0849
*Attorneys for Defendant*